IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07CV348-02-M
(3:00CR212-1-MU)


PAULITO SALAZAR-ACUNA,          )
    Petitioner,                 )
                                )
       v.                       )          O R D E R
                                )
UNITED STATES OF AMERICA,       )
    Respondent.                 )
_____ )


**THIS MATTER** is before this Court upon an initial review of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255, filed August 20, 2007(Doc. No. 1). For the reasons stated herein, Petitioner's Motion to Vacate will be summarily <u>denied</u> and <u>dismissed</u>.

## I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Pertinent to this Motion, the record reflects that on May 8, 2001, a Superceding Bill of Indictment was filed, charging that Petitioner and 11 co-defendants had conspired to possess with intent to distribute in excess of five kilograms of cocaine powder and in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b) and 846 (Count One); and that Petitioner had twice possessed in excess of 500 grams of cocaine powder with intent to distribute those substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b) (Counts Two and Three).

On April 19, 2002, Petitioner filed his Plea Agreement,

which document reflects, <u>inter alia</u>, Petitioner's promise to plead guilty to the conspiracy charge, his stipulations to the existence of a factual basis for his guilty plea and his involvement with 150 kilograms or more of cocaine powder, his acknowledgment that pursuant to the U.S. Sentencing Guidelines, the unadjusted offense level was 38; and it set forth his acknowledgment that he was waiving his right to a direct appeal on any ground and to collateral review on any grounds except ineffective assistance of counsel and prosecutorial misconduct.

The Plea Agreement also records the Government's agreement to dismiss the remaining charges at the conclusion of Petitioner's case; and to evaluate any cooperation by Petitioner in order to determine whether to seek a downward departure for him.

On April 30, 2002, Petitioner appeared before a magistrate judge for a Plea and Rule 11 Hearing.  On that occasion, the Court, using a Spanish-speaking translator/interpreter, placed Petitioner under oath and engaged him in its standard, lengthy colloquy to ensure that his guilty plea was being intelligently and voluntarily tendered.  At the outset of that proceeding, defense counsel advised the Court that he had not recently reviewed the plea colloquy with Petitioner, and so counsel asked the Court for additional time to discuss the proceeding with Petitioner.

However, after a recess, Petitioner and defense counsel returned to Court and announced that Petitioner wanted to

continue with the proceeding. When the proceeding continued, the Court reviewed for Petitioner the critical allegation from the Indictment and the elements of the offense. The Court and both attorneys also reviewed the terms of parties' Plea Agreement with Petitioner.

In response to the Court's questions, Petitioner swore that he had received a copy of the Indictment and had reviewed it with his attorney; and that he fully understood the charge and its corresponding penalties. Equally critically, Petitioner swore that he understood the terms of his Plea Agreement, including its waiver provision; that he had taken enough time to discuss possible defenses with his attorney; and that he understood how the Sentencing Guidelines might be applied in his case. In fact, Petitioner admitted that he was guilty of the subject charge; and that no one had threatened or coerced him into pleading guilty, and no one had made him any promises of leniency in order to induce his plea. On the contrary, Petitioner acknowledged that he was knowingly and voluntarily tendering his guilty plea

Last, Petitioner told the Court that he was satisfied with the services of his attorney, and that "everything [was] fine" between them. Accordingly, the Court determined that Petitioner's guilty plea was knowingly and freely made, and so the Court accepted that plea.

Next, on September 25, 2002, the Court held Petitioner's

Factual Basis and Sentencing Hearing with the assistance of an
interpreter.  At the beginning of that Hearing, Petitioner stated
that he had reviewed his Pre-Sentence Report with his attorney,
and he stipulated that such Report provided a factual basis for
his guilty plea.  Defense counsel also reported his belief that
based upon his exhaustive review, Petitioner understood the
Report.  However, Petitioner told the Court that he had a ques-
tion about the offense levels, and so counsel was given an
opportunity to answer that question.  After taking time to answer
Petitioner's question, Petitioner affirmed that he had no addi-
tional questions and was ready to proceed with the hearing.

    Next, the Government objected to the Report's recommendation
for a sentence reduction under the Safety Valve provision.  Spe-
cifically, the Government stated that although the Safety Valve
provision is listed under U.S. Sentencing Guidelines §5C1.2(5),
it must be applied as a Chapter 2 reduction under §2D1.1(b)(6).
Thus, the Government argued that since Petitioner's Plea Agree-
ment expressly excluded Chapter 2 reductions, he could not
receive one.

    In addition, the Government argued that Petitioner had not
met all of the requirements of the Safety Valve provision.  More
particularly, the Government asserted that information from cer-
tain wiretaps had established that Petitioner had downplayed his
own involvement and intentionally omitted information about other

conspirators of whom he was aware.

In response, defense counsel conceded that the term in the Plea Agreement could not be overcome and that "the information which was elicited came by way of pulling teeth." However, counsel disagreed that Petitioner had been deceptive with the authorities. In sum, defense counsel asserted that although Petitioner's cooperation was not sufficient to meet the higher standard required for a downward departure under §5K of the Guidelines, he believed it was sufficient to meet the standard for a reduction under the Safety Valve provision.

After considering all of the relevant information, the Court found that the parties' Plea Agreement precluded a reduction under the Safety Valve provisions and, in any event, that Petitioner had not met the criteria for such reduction. Therefore, the Court determined that Petitioner's adjusted offense level was 35, his criminal history score was I, and the corresponding range of imprisonment was 168 to 210 months imprisonment.

During his allocution Petitioner, _inter alia_, thanked the Court for its decision and the Government for everything that had been done for him, he asked for forgiveness, and he expressed his opinion that the United States is the "best Country in the world . . . ." The Court then sentenced Petitioner to the lowest possible term of 168 months imprisonment. The Court's Judgment was filed on October 23, 2002.

Petitioner did <u>not</u> immediately appeal either his conviction or his sentence.  Rather, on May 15, 2003, Petitioner filed his first Motion to Vacate under 28 U.S.C. § 2255 (<u>see</u> <u>Acuna v. United States</u>, 3:03cv231-T).  Among his numerous claims, Petitioner argued that his attorney had been ineffective for failing to file an appeal as Petitioner had asked.  The Court addressed and rejected all of Petitioner's claims, and summarily dismissed his Motion to Vacate.  On appeal, however, the Fourth Circuit Court of Appeals concluded that the case <u>United States v. Peak</u>, 992 F.2d 39, 42 (4th Cir. 1993), required that Petitioner's claim that he was denied an appeal be remanded for further proceedings.

On remand, the Government responded to the appeal-related allegation, denying any violation to Petitioner's rights.  In support of that denial, the Government tendered an Affidavit from former defense counsel.  Counsel's Affidavit asserted, among other things, that prior to sentencing, he met with Petitioner and discussed his sentencing prospects; that although it was his normal practice to review appellate options during his pre-sentencing meetings, he could not recall whether he had done that with Petitioner; that he believed that after sentencing, he told Petitioner about the 10-day appeal deadline; that on the day after the Judgment was filed, he sent his interpreter to see Petitioner at the jail; that Petitioner never expressed a desire for an appeal; and that he had received numerous letters from

Petitioner over the intervening years, but none mentioned anything about any denial of an appeal.

On May 9, 2005, this Court entered an Order finding that counsel's Affidavit reported both his standard practice of advising clients of their appellate rights after the imposition of their sentences, and his lack of a specific recollection of whether he had followed that practice in this case. Accordingly, the Court granted Petitioner's Motion to Vacate on that claim, and reimposed its Judgment from which Petitioner was allowed to take a direct appeal.

On direct appeal, Petitioner argued that he was subjected to various instances of ineffective assistance of counsel; and that this Court had erred in denying his request for a reduction under the Safety Valve provisions of the Guidelines. United States v. Acuna, No. 05-4573, slip op. at 2-3 (4th Cir. July 28, 2006). The appellate Court found that Petitioner's waiver was valid and enforceable; that such waiver barred his right to challenge this Court's decision to deny the reduction; and that Petitioner's claims against his trial attorney could not be reached on direct appeal because no deficiencies were conclusively demonstrated on the record. Id. at 3.

Accordingly, Petitioner's conviction and sentence were affirmed and his appeal was dismissed. Petitioner's Petition for Rehearing En Banc was denied on November 28, 2006; and the

appellate Court's Mandate was issued on December 6, 2006.

Now, Petitioner has returned to this Court on the instant Motion to Vacate. By his Motion, Petitioner argues that he was subjected to ineffective assistance of counsel, due to counsel's alleged: (1) "fail[ure] to investigate the law and facts relevant to plausible options"; (2) failure to "familiarize himself with the facts and laws of the case and . . . [to] inform [Petitioner] of the laws and current status of [his] cooperation"; (3) "fail-[ure] to advise [Petitioner} on the substantive issues concerning the case and the advantage and disadvantage of filing an appeal"; (4) giving "errant [sic] advice on signing [a] plea agreement [which] . . . eviscerated [Petitioner's] desire to plead without waiving his appellate rights"; (5) "fail[ure] to inform [Peti-tioner] of any problems with cooperation before sentencing as perceived by the United States Attorney's Office"; (6)"fail[ure] to correctly identify the Safety Valve legislative enactment . . . which t[ook] precedent [sic] over the Guidelines"; (7) fail[ure] to explain to [Petitioner] the Plea Agreement, the U.S. [Sentencing Guidelines], and the P.S.I. report with the aid of an interpreter"; (8) [fail]ure to file a Brief for Downward Depar-ture as promised and as required by the 4th Circuit precedent"; and (9) "fail[ure] to dispute the quantity of drugs attributed to [Petitioner] based on Apprendi . . . and its prognocey [sic]."

Notwithstanding his obvious beliefs to the contrary,

8

however, the Court has determined that Petitioner's claims are defeated by the underlying record and the relevant legal authorities.

## II.  ANALYSIS

1. **This Court is authorized to promptly review and dismiss any § 2255 motion which does not contain a claim that entitles Petitioner to any relief**.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  In the event it is determined that the petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court has carefully reviewed the petitioner's Motion to Vacate and the pertinent record evidence.  As hereafter explained, such review clearly establishes that the petitioner is not entitled to relief on any of his claims.

2. **Petitioner's allegations of ineffectiveness are defeated by his failure to show, through objective evidence, that he would have gotten better results by entering straight up guilty pleas**.

With respect to claims of ineffective assistance of counsel,

a petitioner must show that counsel's performance was constitu-
tionally deficient to the extent it fell below an objective
standard of reasonableness, and that he was prejudiced thereby.
Strickland v. Washington, 466 U.S. 668, 687-91 (1984).  In making
this determination, there is a strong presumption that counsel's
conduct was within the wide range of reasonable professional
assistance. Id. at 689; see also Fields v. Attorney Gen. of Md.,
956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865
(1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir.
1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v.
Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S.
1011 (1978).

        Under these circumstances, the petitioner "bears the burden
of proving Strickland prejudice." Fields, 956 F.2d at 1297,
citing Hutchins, 724 F.2d at 1430-31.  If the petitioner fails to
meet this burden, a "reviewing court need not consider the per-
formance prong." Fields, 956 F.2d at 1290, citing Strickland,
466 U.S. at 697.

        More critically, inasmuch as this petitioner has alleged in-
effective assistance of counsel following the entry of his guilty
plea, he has a different burden to meet.  See Hill v. Lockhart,
474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v.
Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S.
843 (1988).  The Fourth Circuit described the petitioner's burden

in a post-guilty plea claim of ineffective assistance of counsel
as follows:

> When a [petitioner] challenges a conviction
> entered after a guilty plea, [the] "prejudice
> prong of the [Strickland] test is slightly
> modified.  Such a defendant must show that
> there is a reasonable probability that, but
> for counsel's errors, <u>he would not have
> pleaded guilty and would have insisted on
> going to trial</u>."

<u>Hooper</u>, 845 F.2d at 475 (emphasis added); <u>accord</u> <u>Hill v. Lock-</u>
<u>hart</u>, 474 U.S. at 59-60; <u>and</u> <u>Fields</u>, 956 F.2d at 1297.  Criti-
cally, however, if a petitioner fails to meet his burden of
demonstrating prejudice, a "reviewing court need not consider the
performance prong."  <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>,
466 U.S. at 697.

The "central inquiry" is whether, but for counsel's alleged
errors, Petitioner would have insisted on a trial, <u>Slavek v.</u>
<u>Kinkle</u>, 359 F.Supp.2d 473, 491 (E.D. Va. 2005) (summarily rejec-
ting claims of ineffectiveness on prejudice prong based on
petitioner's failure and inability to argue that but for alleged
errors, he would have insisted on trial or entered a different
guilty plea).  In the present case, the Court notes that Peti-
tioner does not assert that but for counsel's ineffectiveness, he
would have insisted upon going to trial.  Rather, Petitioner
interestingly contends that but for counsel's ineffectiveness, he
would have insisted upon entering "straight up" guilty pleas
However, because the record of this matter fails to objectively

11

demonstrate that Petitioner would have obtained better results had he entered such pleas, his claims are subject to summary dismissal on that basis alone.

Indeed, courts have stated that the critical inquiry is an "objective one" based on whether going to trial or, in this case, pleading guilty "straight up" might "reasonably have resulted in a different outcome." Martin v. United States, 395 F. Supp. 2d 326, 329 (D. S.C. 2005). See also Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard); and Burkett v. Angelone, 208 F.3d 172, 190-91 (4th Cir. 2000) (same).

To begin, Petitioner was charged with conspiring to traffic in excess of 5 kilograms of cocaine powder and 100 kilograms of marijuana; and he was charged with two substantive drug trafficking counts, each involving 500 grams or more of cocaine. In a Brief filed by Petitioner in connection with his direct appeal, Petitioner, himself, conceded that he was involved with "an extensive cocaine distribution ring operated by Higinio Padron Vazquez"; and that "Vazquez was responsible for sending between 3,000 and 5,000 kilograms of cocaine from Chicago and elsewhere to Charlotte, NC and other areas." (See Petitioner's Motion to Vacate at 45). In addition, the Government's evidence, as

reflected in Petitioner's Pre-Sentence Report, tended to
establish that he played a leadership role in the Charlotte cell
of the Vazquez conspiracy; that he had "numerous individuals who
worked directly for him"; that he purchased drugs from various
sources in 10 to 40 kilogram quantities; and it was "estimated
that he [was] responsible for or aware of the distribution of at
least 300 kilograms of cocaine over the span of the conspiracy."

According to Petitioner's Pre-Sentence Report, had he pled
guilty straight up and simply been subject to the managerial
enhancement, he would have faced a "guideline imprisonment range
of 235 to 293 months," rather than the 168 to 210 month range in
which he actually was sentenced.  Based upon the foregoing, this
Court cannot reasonably conclude that Petitioner somehow would
have obtained a better result had he entered straight-up guilty
pleas.  Therefore, pursuant to the relevant legal principles,
none of Petitioner's claims against his former counsel can be
sustained.

   3.   **Notwithstanding his failure to demonstrate that
        he was prejudiced by counsel's performance, Pe-
        titioner's claims also are subject to dismissal
        as legally and/or factually baseless**.

By his first two claims, Petitioner alleges that his former
attorney failed to investigate the laws and facts relevant to
plausible options, and to familiarize himself with the facts and
laws of his case.  However, as can be observed from this Court's
factual recitation, these belated allegations are belied by the

record of the underlying criminal proceedings.

The law is well settled that in evaluating a post-guilty plea claim of ineffective assistance, statements previously made under oath affirming satisfaction with counsel, such as those made during a Rule 11 proceeding, are binding on the defendant absent "clear and convincing evidence to the contrary." Fields 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). Accord United States v. Lemaster, 403 F.3d 216, 220-23 (4th Cir. 2005) (affirming summary dismissal of § 2255 motion, including ineffective assistance claim, noting inconsistent statements made during Rule 11 hearing).

Here, the record reflects that during his Rule 11 hearing, Petitioner stated, under oath, that he had received a copy of his Indictment and had discussed that document, the charges and the corresponding penalties with his attorney. Petitioner further swore that he fully understood those matters; and that he and counsel had discussed possible defenses to his charges. Thus, this record totally undermines Petitioner's claims that counsel failed to investigate his case and to familiarize himself with the laws governing the case.

The record also stands as an obstacle to Petitioner's claim that counsel failed to explain his Plea Agreement, the U.S. Sentencing Guidelines and his Pre-Sentence Report "with the aid of an interpreter." Indeed, despite this belated allegation,

during his Rule 11 proceeding, Petitioner swore that he under-
stood the terms of his Plea Agreement, including its waiver
provision; and that he and counsel had discussed the Guidelines,
and he understood how they could have been applied in his case.
In addition, Petitioner told the Court that he was satisfied with
his attorney, and that everything was fine between them.

During his Sentencing hearing, Petitioner told the Court
that he and counsel had reviewed the Pre-Sentence Report.  Peti-
tioner also stipulated that the information in that Report
provided a factual basis for his guilty plea.  Other than Peti-
tioner's attempt to make much of the fact that his attorney had
to take additional time to explain some things to him at the
outset of his Rule 11 and Sentencing proceedings, Petitioner has
failed to present any evidence which conflicts with his sworn
representations that he understood his Plea Agreement, the
Guidelines and his Pre-Sentence Report.  Therefore, this claim
also must be rejected.

Petitioner also alleges that counsel gave him erroneous
information about signing his Plea Agreement, thereby "eviscera-
t[ing] his desire to plead guilty without a plea agreement" and
to avoid waiving his appellate rights.  However, as with the
above claims, the record of this case tends to sharply contradict
this allegation.

In particular, as was previously noted, Petitioner cannot

objectively establish that he would have obtained a better sentence had he pled guilty without a plea agreement. Rather, such a decision would have exposed Petitioner to the three-level managerial enhancement which would have been applicable in the absence of his Plea Agreement's exclusion of that increase. That managerial enhancement, alone, would have exposed Petitioner to a range of 235 to 293 months imprisonment, that is, to a range which was 67 to 83 months <u>longer</u> than the range in which he was sentenced.

Furthermore, during his Plea hearing, Petitioner swore that his guilty plea was being voluntarily and intelligently tendered; that no one had coerced or threatened him into pleading guilty; and that no one had made him any promises of leniency in order to secure his plea. Therefore, in light of the fact that Petitioner's Plea Agreement greatly benefitted him, and he has failed to credibly rebut his earlier sworn statements concerning the voluntariness of the plea, Petitioner cannot demonstrate either deficient performance or prejudicial result in connection with his claim that counsel gave erroneous information about pleading guilty under his Plea Agreement. <u>See</u> <u>Fields</u>, 956 F.2d at 1299 (noting that the fact that a plea bargain is "favorable" to a defendant and that accepting it was "a reasonable and prudent decision" is itself evidence of "[t]he voluntary and intelligent" nature of the plea).

Petitioner also alleges that counsel failed to "advise [him] on the substantive issues concerning the case and the advantage and disadvantage of filing an appeal." However, this allegation is belied by Petitioner's sworn representations that he and counsel had, in fact, discussed the terms of his Agreement, including the appellate waiver provisions. Moreover, inasmuch as Petitioner ultimately was permitted to file a direct appeal in this matter, he cannot establish defective performance or resulting prejudice here.

Furthermore, as to the allegation that counsel failed to advise Petitioner of the substantive issues concerning the case, such claim is vague and conclusory. To be sure, Petitioner does not point to any specific substantive issue about which he believes he should have been advised. Moreover, as has already been demonstrated, this claim is foreclosed by Petitioner's sworn representations that he and counsel had, in fact, discussed his charge, the penalties, and the possible defenses which he could have raised. Thus, this claim must be flatly rejected.

Petitioner also argues that counsel failed to use the holdings from Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny, to challenge the quantity of drugs which were attributed to him. In Apprendi, the Supreme Court held that other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the

jury and proven beyond a reasonable doubt.  However, the Indict-
ment in this case alleged a conspiracy involving "in excess of
five kilograms," and Petitioner ultimately was convicted and
sentenced based upon his guilty plea and his stipulation to
involvement with more than 150 kilograms.

Moreover, Petitioner never has challenged the information in
his Pre-Sentence Report which reports that he was the leader of a
cell within his conspiracy which was "responsible or aware of the
distribution of at least 300 kilograms."  Accordingly, given the
fact that this was not a case which went to trial on any issue
and the fact that all of the evidence--including Petitioner's
stipulation--supports his sentence, Petitioner cannot demonstrate
either deficient performance or resulting prejudice on the basis
of counsel's decision not to raise a claim under Apprendi.  See
United States v. Williams, 29 F.3d 172, 174-75 (4th Cir. 1994)
(noting that a stipulation to particular drug quantity consti-
tutes a waiver of the right to appeal/challenge that issue); see
also United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002)
(to object to drug quantities in pre-sentence report, defendant
has affirmative duty to show that information is inaccurate or
unreliable).

Petitioner also claims that counsel failed to discern that
the Safety Valve provision was enacted by Congress and, there-
fore, takes precedence over the Sentencing Guidelines because the

latter were promulgated by a regulatory agency. However, even assuming that counsel failed to properly discern the authority of the Safety Valve provision under 18 U.S.C. § 3553(f), Petitioner still cannot demonstrate that he was prejudiced thereby.

To be sure, to qualify for a sentence reduction under the Safety Valve provision, a defendant has to meet five criteria. See 18 U.S.C. § 3553(f)(1) through (5). Critical here, to qualify for a reduction, Petitioner would have had to truthfully provide to the Government all information and evidence which he had concerning the offense or offenses that were part of the same course of conduct as his offense, and he could not have been an organizer, leader, manager, or supervisor of others who were involved in his offense.

However, Petitioner's Pre-Sentence Report clearly reflects that he played a supervisory role in his conspiracy; and that he was only able to avoid the consequences of that role by virtue of his attorney's having negotiated for a Plea Agreement which omitted its stipulation to a managerial enhancement. Furthermore, at sentencing, the Government advised the Court that it had evidence which showed that Petitioner had "not been completely truthful . . . in his debriefings and ha[d] not been completely candid and forthcoming in relation to his drug activity and those players associated with him in that drug activity." (Sentencing Transcript at 12-13, filed August 19, 2005). After considering

the law and the parties' arguments, the Court determined that Petitioner did not qualify for the Safety Valve reduction.

Based upon the foregoing, then, Petitioner cannot demonstrate that he was harmed by counsel's alleged failure to properly discern the statutory weight of the Safety Valve provision. On the contrary, it was Petitioner's own conduct, both before and after he was indicted, which precluded his receipt of a reduced sentence under that provision. Consequently, this claim must be rejected.

Similarly, Petitioner claims that counsel failed to inform him of any problems with his cooperation and of the status of his cooperation before sentencing. However, the record of this matter reflects that this claim is baseless. Indeed, as defense counsel recounted at sentencing, during his numerous debriefings with federal authorities, Petitioner was less than forthcoming with his information. Counsel actually described those debriefing sessions as an exercise in "pulling teeth."

Also, as the Court previously noted, the Government advised the Court of its evidence that Petitioner had attempted to omit information about his activities and those of a co-conspirator. Inasmuch as Petitioner's own conduct was the impediment to his receiving a favorable evaluation for his cooperation, he was or should have been well aware of the status of his cooperation with the Government. To put it simply, Petitioner knew that he was

not fully cooperating with the Government.  Therefore, he cannot possibly demonstrate that he was prejudiced by counsel's alleged failure to report that the Government was not impressed with him.

Petitioner also argues that counsel failed to file a Brief for a Downward Departure as he had promised to do in a letter to Petitioner and as required by certain Fourth Circuit precedent. Notably, Petitioner does not point to any specific fact which he believed would have supported a downward departure.  Thus, for that reason and the ones that follow, this claim is factually baseless.

In addition to Petitioner's failure to articulate why he believes he should have received a departure, the letter on which he relies does not reflect any promise from counsel to file a brief for a downward departure.  Rather, the subject letter - which was written prior to the time that Petitioner was indicted and had secured the Government's promise to evaluate his co-operation and seek a departure, if warranted - reflects counsel's hope that Petitioner could earn a motion for a downward departure from the Government in exchange for his full cooperation.  Thus, Petitioner is mistaken as to the nature of the letter.  Moreover, it has not escaped this Court's attention that downward departure motions based on defendants' cooperation can only be made by the Government, not defense counsel.

It also has not escaped the Court's attention that Peti-

tioner is attempting to support this claim by relying on cases
which simply are not helpful to him.  That is, one of the two
cases, <u>United States v. Brock</u>, 108 F.3d 31, 32 (4th Cir. 1997),
was remanded by the Circuit Court for consideration of whether
the defendant's rehabilitation efforts were exceptional and, if
so, whether a departure was warranted.  Here, Petitioner does not
even bother to argue that he underwent exceptional rehabilitation
during the pendency of his case.  And, to the extent that Peti-
tioner is attempting to rely on his pre-sentencing efforts to
learn to speak English, such efforts, while commendable, fall far
short of demonstrating exceptional rehabilitation.

Similarly, the other case on which Petitioner relies, <u>Koon
v. United States</u>, 518 U.S. 81, 94-96 (1996) merely explains the
three categories into which departures can be divided, <u>i.e.</u>,
departures based on an encouraged factor, departures based on a
discouraged factor or an encouraged factor which already is
accounted for by the applicable Guideline, and departures based
upon a factor which is not mentioned in the Guidelines.  Again,
however, because Petitioner does not point to any specific ground
upon which he believes counsel could have sought a departure, the
<u>Koon</u> case simply does not support his claim against counsel.
Consequently, Petitioner is not entitled to any relief on this
claim.

### III.  CONCLUSION

Petitioner has failed to establish an entitlement to relief on any of his claims that his former attorney rendered to him ineffective assistance of counsel.  Therefore, Rule 4(b) of the Rules Governing Section 2255 Proceedings requires this Court to dismiss the instant Motion to Vacate.

### V. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: February 1, 2008

Graham C. Mullen
United States District Judge